Brian K. Gallik
Jecyn N. Bremer
GALLIK LAW FIRM, P.C.
421 West Mendenhall
P.O. Box 70
Bozeman, MT 59771-0070
brian@galliklawfirm.com
jbremer@galliklawfirm.com
Ph.:   (406) 404-1728
Fax:   (406) 404-1730

Robert Klingler     (*pro hac vice* application to be filed)
Brian J. Butler     (*pro hac vice* application to be filed)
Robert A. Klingler Co., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, OH  45202
rak@klinglerlaw.com
bjb@klinglerlaw.com
Ph:   (513) 664-9500
Fax:  (513) 621-3240

Attorneys for Plaintiff Shaela Evenson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| **SHAELA EVENSON,** | Case No. CV 14-55-BU-DWM-JCL |
| PLAINTIFF, | **COMPLAINT AND DEMAND FOR JURY TRIAL.** |
| v. | |
| **BUTTE CENTRAL CATHOLIC SCHOOLS,** | |
| DEFENDANT. | |

For her Complaint against Defendant Butte Central Catholic Schools, Plaintiff Shaela Evenson states as follows:

## PARTIES, JURISDICTION & VENUE.

1. Plaintiff, Shaela Evenson, is an individual residing in Butte, Montana. At all times relevant, she was an employee of Defendants Diocese of Helena and Butte Central Catholic Schools as that term is defined in 42 U.S.C. § 2000-e and MCA. §49-2-101(10)(a).

2. Defendant Butte Central Catholic Schools ("BCCS") is a Montana parochial school with its principal place of business in Butte, Montana. BCCS conducts business in the District of Montana, specifically, in Butte, Montana. BCCS is an employer within the meaning of 42 U.S.C. § 2000-e and M C A § 49-2-1-101(11).

3. The Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 because Ms. Evenson's claims are based on federal law, 42 U.S.C. § 2000-e, *et seq*.

4. This Court has jurisdiction over Count III pursuant to 28 U.S.C. § 1367 because the state claim is so related to the federal claims in Counts I and II that they form part of the same case or controversy.

5. Venue is appropriate in the Butte Division of the District of Montana pursuant to 28 U.S.C. § 1391(b) and Local Rules ("L.R.") 1.2(c)(2) and 3.2(b)(1), because a substantial amount of the conduct giving rise to Ms. Evenson's claims occurred within the District of Montana, specifically, Butte-Silver Bow County, Montana.

6. Ms. Evenson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Diocese and BCCS in February 2014. On June 16, 2014, Ms. Evenson received a Notice of Right to Sue letter from the EEOC for her charge against the Diocese and BCCS.

## FACTUAL ALLEGATIONS.

7. BCCS hired Ms. Evenson as a School Teacher in August 2005.

8. The terms of Ms. Evenson's employment were set forth in one-year employment agreements which BCCS renewed annually.

9. BCCS renewed Ms. Evenson's employment agreement on July 25, 2013.

10. BCCS operates under the authority of the Diocese of Helena ("Diocese"), a Montana religious organization with its principal place of business in Helena, Montana.

11. The Diocese exercised control over the terms and conditions of Ms. Evenson's employment, including: the authority to hire, terminate, and discipline

3

her; control over her pay; supervision of her employment; and promulgation of rules and conditions of employment. In addition, the Diocese and BCCS are so interrelated that they constitute a "single employer" or "integrated enterprise." The Diocese and BCCS had interrelation of operations, common management, centralized labor relations, and common financial control.

12. Ms. Evenson taught literature and physical education to sixth, seventh, and eighth grade students at BCCS.

13. Ms. Evenson is not Catholic. BCCS and the Diocese were aware that Ms. Evenson is not Catholic.

14. Ms. Evenson was not a ministerial employee during the course of her employment with BCCS and the Diocese. Ms. Evenson was not assigned to teach religion courses, held no ordination in the Catholic Church, and she received no certification in connection with teaching at Catholic schools.

15. Ms. Evenson is not married.

16. In the summer of 2013, Ms. Evenson became pregnant through artificial insemination.

17. On October 28, 2013, Kerrie Hellyer, the principal of BCCS, approached Ms. Evenson and asked if she was pregnant. Ms. Evenson confirmed that she was pregnant. Ms. Hellyer congratulated Ms. Evenson and informed her that she would do anything she could to help.

4

18. On January 3, 2014, the Diocese received an anonymous letter stating that Ms. Evenson was pregnant and not married. The Diocese contacted Ms. Hellyer who confirmed that Ms. Evenson was pregnant and not married.

19. On Thursday, January 9, 2014, the superintendent of schools for the Diocese, Patrick Haggarty, called Ms. Evenson into a meeting. During that meeting, he informed her that he and the Bishop of Helena had received an anonymous letter stating that Ms. Evenson was pregnant and not married. Mr. Haggarty further informed Ms. Evenson that she had violated her employment contract because she was pregnant and not married.

20. Mr. Haggarty suggested that Ms. Evenson resign. She refused.

21. On Friday, January 10, 2014, Mr. Haggarty again suggested that Ms. Evenson resign, and he recommended that she take the weekend to consider resigning. Ms. Evenson again refused to resign.

22. On Sunday, January 12, 2014, Mr. Haggarty sent a letter to Ms. Evenson, by email, notifying her that her employment with BCCS was being terminated immediately for having a child out of wedlock. The letter stated in relevant part "having a child out of wedlock is considered 'at variance with or contrary to polices of the School and the Diocese and the moral and religious teachings of the Roman Catholic Church.' . . . Under the terms of your contract these are sufficient grounds and just cause for immediate discharge."

5

23. BCCS and the Diocese terminated Ms. Evenson because of her sex and pregnancy in violation of federal law, and because of her sex and pregnancy in violation of Montana law.

24. On information and belief, male employees and non-pregnant female employees of the Diocese and BCCS have in the past, and continue to, engage in conduct at variance with or contrary to policies of the Roman Catholic Church without being terminated or otherwise facing adverse employment action. On information and belief, male employees and non-pregnant female employees of the Diocese and BCCS are not subject to termination for violating the teachings of the Roman Catholic Church because they do not show outward signs of pregnancy.

## COUNT I.

### Pregnancy Discrimination—42 U.S.C. § 2000e-2.

25. Ms. Evenson repeats the allegations in paragraphs 1 through 25 of the Complaint as if fully restated herein.

26. Ms. Evenson was pregnant.

27. BCCS was aware that Ms. Evenson was pregnant.

28. Ms. Evenson was qualified for her position as a teacher.

29. BCCS subjected Ms. Evenson to an adverse employment decision.

6

30. There is a nexus between Ms. Evenson's pregnancy and the adverse employment decision. BCCS has admitted that Ms. Evenson was terminated for becoming pregnant out of wedlock.

31. As a result of BCCS's actions, Ms. Evenson has incurred damages including lost wages, benefits, and other compensation. Ms. Evenson also suffered emotional distress as a result of her termination. BCCS acted with malice and with a conscious disregard for the rights of others that had a great probability of causing substantial harm.

## COUNT II.

### Disparate Impact Sex Discrimination—42 U.S.C. § 2000e-2.

32. Ms. Evenson repeats the allegations in paragraphs 1 through 32 of the Complaint as if fully restated herein.

33. BCCS terminated Ms. Evenson for violating the teachings of the Roman Catholic Church. BCCS admitted it terminated Ms. Evenson for becoming pregnant out of wedlock.

34. On information and belief, BCCS does not investigate male employees and non-pregnant female employees for compliance with the teachings of the Roman Catholic Church. BCCS's only means to determine compliance is observation of pregnancy in unmarried women.

35. Failing to check male employees and non-pregnant female employees for compliance with the teachings of the Roman Catholic Church has a discriminatory impact on female employees who become pregnant and are unmarried.

36. As a result of Defendants' actions, Ms. Evenson has incurred damages including lost wages, benefits, and other compensation. Ms. Evenson also suffered emotional distress as a result of her termination. BCCS acted with malice and with a conscious disregard for the rights of others that had great probability of causing harm.

## COUNT III.

### Breach of Contract.

37. Ms. Evenson repeats the allegations in paragraphs 1 through 37 of the Complaint as if fully restated herein.

38. Ms. Evenson entered a contract with BCCS in 2013 to act as a teacher at the school for a term of one year. The contract is attached hereto as Exhibit A.

39. Ms. Evenson performed all obligations under the contract.

40. BCCS breached the contract by terminating Ms. Evenson's employment on January 12, 2014 without good cause or any other justification under the contract.

8

41. Ms. Evenson has suffered damages as a result of BCCS's breach including lost wages and employment benefits.

## COUNT IV.

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

42. Ms. Evenson repeats the allegations in paragraphs 1 through 42 of the Complaint as if fully restated herein.

43. Ms. Evenson entered a contract with BCCS in 2013 to act as a teacher at the school for a term of one year. The contract is attached hereto as Exhibit A.

44. A special relationship existed between BCCS and Ms. Evenson in accordance with Story v. City of Bozeman, 259 Mont. 207, 856 P.2d 202 (1993). By reason of the existence of this special relationship, Ms. Evenson justifiably expected that BCCS would act reasonably and would not fail to do anything that would injure, impair or interfere with her rights to receive the benefits of that contract.

45. Ms. Evenson performed all obligations under the contract.

46. BCCS breached the contract by terminating Ms. Evenson's employment on January 12, 2014 without good cause or any other justification under the contract.

47. The actions and conduct of BCCS were arbitrary, capricious, unreasonable and fell short of Ms. Evenson's justifiable expectations of how

9

BCCS would act and therefore constituted a breach of the implied covenant of good faith and fair dealing.

48. Ms. Evenson has suffered damages as a result of BCCS's breach including lost wages and employment benefits in amounts to be proven at trial.

49. BCCS's actions were malicious, oppressive and committed with reckless disregard for Ms. Evenson's rights. Such actions and conduct should therefore be punished by an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Shaela Evenson demands judgment against Defendant Butte Central Catholic Schools as follows:

1. An award of back pay in the amount Ms. Evenson would have earned from the date of her wrongful termination until the date of judgment, including wages, benefits, and prejudgment interest;

2. An award of back pay from the time of her termination until trial;

3. An award of front pay equal to the amount she would have earned from the date of judgment forward;

4. An award of compensatory damages against BCCS for the emotional distress and other damages Ms. Evenson has suffered as a result of BCCS's wrongful actions;

5. An award of punitive damages;

10

6. An award of attorney fees and costs; and

7. All other relief to which she may be entitled as the Court deems just and proper.

### Jury Demand.

*Plaintiff, through counsel, demands a trial by jury on all matters so triable.*

RESPECTFULLY SUBMITTED this 20th day of August, 2014.

GALLIK LAW FIRM, P.C.

/s/ Brian K. Gallik
Brian K. Gallik
421 West Mendenhall
PO Box 70
Bozeman, Montana 59771
Telephone: (406) 404-1728
brian@galliklawfirm.com

*Attorneys for Plaintiff Shaela Evenson*